Patrick M. SMITH, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03–407 C.

United States Court of Federal Claims.

Dec. 15, 2003.

---

Patrick M. Smith, Plaintiff, pro se.

David R. Feniger, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director; and Major Vanessa Crockford and Major Gary P. Corn, U.S. Army Litigation Division, Arlington, Virginia, Of Counsel.

## OPINION

DAMICH, Chief Judge.

### I. Introduction

In this case, Plaintiff Patrick M. Smith, acting pro se, alleges a claim to back pay and allowances, and interest thereon, commensurate with service in the United States Army at the pay grade of E–4 for the period from his general court-martial through the date he was originally scheduled for discharge. Plaintiff avers that the judge advocate who presided over his court-martial and convic-

tion for kidnaping, rape, and murder was not qualified to sit as the military judge in his proceeding because he was not an active member of the highest court of his state bar of record.

Defendant has moved to dismiss the complaint for failure to state a claim on which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). Oral argument is deemed unnecessary. For the reasons stated below, the Court **GRANTS** Defendant's motion to dismiss.

### II. Background

In 1994, while serving with the United States Army in Germany, Mr. Smith was court-martialed and convicted after having pled guilty to charges of kidnaping, rape, and murder. *See Smith v. Commandant,* 48 Fed.Appx. 712 (10th Cir.2002). He was sentenced to life imprisonment, forfeiture of pay and allowances, and reduction in rank; given a dishonorable discharge; and ordered to pay a substantial monetary fine to the United States.

Plaintiff appealed his conviction to the Army Court of Criminal Appeals (Army Court or A.C.C.A.). In 1996, the A.C.C.A. upheld the conviction, sentence, and fine (although it found that the fine enforcement provision unduly restricted the ultimate parole authority of the Secretary of the Army). Plaintiff then filed two petitions for review before the United States Court of Appeals for the Armed Forces (C.A.A.F.), alleging, among other things, ineffective assistance of counsel and unconstitutionality of the fine. In 1998, the C.A.A.F. affirmed the decision of the Army Court.

Mr. Smith next filed a petition in 1999 for a writ of habeas corpus before the A.C.C.A., claiming, inter alia, that, because the military judge at his court-martial was not an *active* member of the bar of a federal court or of the highest court of a state, pursuant to 10 U.S.C. § 826(b),[1] he was therefore statutorily

---

1. A military judge shall be a commissioned officer of the armed forces who is a member of the bar of a Federal court or a member of the bar of the highest court of a State and who is certified to be qualified for duty as a military judge by the Judge Advocate General of the armed forces of which such military judge is a member.
10 U.S.C. § 826(b).

unqualified (and the proceeding thus without jurisdiction). The government was ordered to show cause to demonstrate that the military judge had statutorily been qualified to preside, upon which showing that court summarily denied Plaintiff's petition.

Mr. Smith then proceeded to file a habeas petition in the United States District Court for the District of Kansas, asserting the same claims in his military habeas petition. The district court dismissed the petition in 2001 and denied relief. The district court's memorandum and order also specifically ruled on Plaintiff's claim that the military judge was unqualified to preside over the court-martial because he was not an active member of his state's highest court's bar:

> Petitioner's allegation, even if true, that the judge was not an active member of the Utah bar, does not establish a lack of qualification ... To qualify to be certified under § 826, the judge advocates must be members of the Bar of the highest court of a state or federal court. However, there is no requirement in the statute that members be of active rather than inactive status. Petitioner does not present any legal authority establishing that active status is a legal prerequisite.

*Smith v. Lansing,* No. 99–3170–RDR (D.Kan. Nov. 14, 2001).

The district court concluded that the military judge who tried Mr. Smith was "an inactive member of the Utah bar with no disciplinary infractions rendering him in good standing, as well as a member in good standing of the bar of a federal court, and properly certified as a military judge." *Id.* Plaintiff appealed to the United States Court of Appeals for the Tenth Circuit, which affirmed the district court's dismissal. Plaintiff's subsequent petition for a writ of certiorari to the Supreme Court of the United States was denied.

## III. Discussion

Defendant argues that Plaintiff's complaint in this Court, founded on his allegation that the military judge was not qualified to preside at his court-martial, is barred by the doctrines of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion) and, therefore, should be dismissed for failure to state a claim upon which relief can be granted.

As noted in *Heim v. United States,* 50 Fed.Cl. 225, 233 (2001), the Supreme Court has addressed the foundation of the two related doctrines:

> A fundamental precept of common-law adjudication ... is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...." Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (internal citations and footnote omitted).

### A. Plaintiff's Claim Is Not Barred by Res Judicata.

In *Int'l Nutrition Co. v. Horphag Research, Ltd.,* 220 F.3d 1325, 1328 (Fed.Cir. 2000), the United States Court of Appeals for the Federal Circuit described the application of res judicata as requiring "a prior final judgment on the merits by a court or other tribunal of competent jurisdiction; identity of the parties or those in privity with the parties; and a subsequent action based on the same claims that were raised, or could have been raised, in the prior action." Shortly

thereafter, in *Jet, Inc. v. Sewage Aeration Systems*, 223 F.3d 1360, 1362 (Fed.Cir.2000), the Federal Circuit spelled out a specific three-part test for claim preclusion: 1) identity of parties (or their privies); 2) an earlier final judgment on the merits of a claim; and 3) the second claim based on "the same set of transactional facts as the first." *Accord Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed.Cir.2003). Both in *Jet, Inc.* and in *Ammex*, the Federal Circuit has noted that it is guided in its interpretation of res judicata by the Restatement (Second) of Judgments (1982) (*see Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed.Cir.1983)) and that the Restatement prescribes that the common set of transactional facts be identified "pragmatically." Restatement (Second) of Judgments § 24(2). In *Jet, Inc.*, the court further observed that "courts have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same, factual allegations.'" *Jet, Inc.*, 223 F.3d at 1363 (internal citations omitted).

### 1. Identical Parties

■ Despite Mr. Smith's arguments to the contrary, it is beyond contradiction that the parties to the two actions are identical. The putative defendant in Mr. Smith's habeas action before the district court was the Commandant of the United States Disciplinary Barracks, whereas here the named defendant is the United States, but, as Defendant points out, both defendants constitute the government of the United States acting through its officials. Plaintiff himself acknowledges that he named the Commandant as the defendant in the habeas action in the latter's capacity as a "representative of an agency of the Executive branch of the Federal government." Pl.'s Br. at 9. Certainly, the suit here involves the same parties "or their privies" as those in the district court action. *Ammex, Inc.*, 334 F.3d at 1055.

### 2. Prior Final Judgment on the Merits

The district court opinion directly addressed—and rejected—the merits of Mr. Smith's claim that the presiding judge advocate was unqualified because he was not an active member of the Utah state bar. The district court thus rendered a final judgment on the merits on this aspect of his earlier claim.

### 3. Instant Claim Based on Same Set of Transactional Facts

Plaintiff's instant claim is one for money damages, as befitting and required for an action in this Court, for the period between his court-martial and the date he otherwise would have been discharged. Although such a claim differs in its request for monetary relief from his earlier claim for habeas relief, it would appear that the core or nucleus of operative facts on which both claims are founded are the same or very nearly the same, i.e., whether the presiding military judge was a member in good standing of his state bar, pursuant to 10 U.S.C. § 826(b). "Altering the theory of recovery does not create a new claim under the transactional approach." *Tindle v. United States*, 56 Fed. Cl. 337, 347 (2003). Res judicata "extends beyond those causes of action expressly included by the plaintiff in his claim to cover causes of action which were not but *should* have been raised in the prior litigation." *Florida Power & Light Co. v. United States*, 41 Fed.Cl. 477, 483 (1998) (emphasis in original) (citation omitted), *rev'd on other grounds, Florida Power & Light Co. v. United States*, 198 F.3d 1358 (Fed.Cir.1999).

Moreover, Defendant suggests that the district court could have heard claims by Mr. Smith for injunctive relief and for limited monetary damages. *See Powell v. United States*, 39 Fed.Cl. 236, 238 (1997). In *Powell*, the plaintiff, an Air Force technical sergeant, had been convicted of criminal misconduct and sentenced to ten years confinement, reduction in grade, and dishonorable discharge. In a petition for habeas relief before the district court, the essential purpose of which was reversal of his conviction, discharge, and denial of pay and benefits, he alleged the violation of several constitutional and statutory provisions. The district court denied all of the plaintiff's claims; he voluntarily dismissed a subsequent appeal; and he re-initi-

ated an action before the Court of Federal Claims challenging his conviction, denial of retirement benefits, and denial of back pay in an amount exceeding $100,000.

The court granted the government's motion to dismiss on the basis of res judicata.

> Under the "little" Tucker Act, 28 U.S.C. § 1346(a)(1) (1992), the district court would have had jurisdiction to hear these money claims, although it would not have been able to enter a judgment for more than $10,000 ... Nor does it concern [this] court that the district court would only have been able to award a portion of the back pay plaintiff was seeking. The award of any relief required the presence of what the district court had—subject matter jurisdiction. Plaintiff could have waived his right to recover more than $10,000, or he could have limited his request to declaratory relief in order to set up a claim here to enforce the entire back pay request.

*Id.*

The court in *Powell* noted, however, that "[i]f the petition in the district court had been in the nature of a *true* habeas corpus petition, the relief, if any, would have been addressed strictly to plaintiff's incarceration." *Id.* at 237 (emphasis added). Unlike the "habeas" petitioner in *Powell*, whose action was styled a petition for writ of habeas corpus but which sought, inter alia, back pay and retirement benefits, Mr. Smith's habeas action before the district court sought only relief from conviction and incarceration on the allegation that the court-martial lacked jurisdiction. At the district court, Mr. Smith did not specifically seek damages.

Collateral civil claims cannot be presented in a "true" habeas petition because immediate or more speedy release from custody is the traditional purpose of a habeas petition. *Preiser v. Rodriguez,* 411 U.S. 475, 494, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The question arises, therefore, whether Plaintiff indeed could have raised his claim for back pay in the district court action. In *Preiser,* the Supreme Court distinguished habeas petitions from civil actions, noting that procedure for habeas petitions provides for "swift, flexible and summary determination" of a party's claim, whereas civil claims are subjected to

original jurisdiction that incorporates "the full panoply of the Federal Rules of Civil Procedure" and necessarily takes more time than review of a habeas petition. *Id.* at 495–96, 93 S.Ct. 1827. Thus, "[i]n the case of a damages claim, habeas corpus is not an appropriate or available claim." *Id.* at 494, 93 S.Ct. 1827. Or, conversely stated, "damages are not available in a habeas corpus petition." *Cravatt v. Thomas,* 399 F.Supp. 956, 963 (W.D.Wis.1975).

While *Preiser* strongly suggests that the district court that heard, and denied, Mr. Smith's habeas action did not have authority to consider his claim for back pay damages at that time, his claim before this Court is nevertheless still based on the same set of transactional facts as his habeas action before the district court. Defendant notes that res judicata prohibits a plaintiff "from asserting the same transactional facts under a different cause of action." *Bass v. United States,* 11 Cl.Ct. 295, 298 (1986). Accordingly, if the test of "same set of transactional facts," as articulated in *Jet, Inc.,* is intended by the Federal Circuit to supercede the requirement, articulated in *International Nutrition,* of a "subsequent action based on the same claims that were raised, or *could have been raised,* in the prior action," then all the necessary elements are evident to bar Plaintiff's claim on the basis of res judicata. If the articulation in *Jet, Inc.,* however, was no more than a restatement of the Federal Circuit's existing precedent on the doctrine of res judicata, and that a party's capacity to have raised a claim in the earlier action is subsumed in the overall test, then res judicata will not bar Mr. Smith's action before this Court.

It seems evident that the Federal Circuit construes both the articulations of *Jet, Inc.* and *International Nutrition* together. In *Ammex, Inc.,* in 2003, the Federal Circuit again recited the requirement that " '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action.' " *Ammex, Inc.,* 334 F.3d at 1055 (emphasis added) (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103

(1981)). The *Ammex* court also favorably cited *Young Eng'rs, Inc.*, which held

> When ... formal barriers in fact existed [to a litigant's presenting his entire claim to a court in one action] and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

*Young Eng'rs, Inc.*, 721 F.2d at 1315.

Based on the foregoing analysis, this Court will not bar Plaintiff's action on the basis of res judicata.

### B. *Plaintiff's Claim Is Barred by Collateral Estoppel.*

■ The Court agrees, however, with Defendant that, even if Plaintiff's subsequent cause of action is not barred by res judicata, his complaint would still be barred on the basis of collateral estoppel. A party is collaterally estopped from relitigating an *issue*, as distinct from a *claim*, if

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issues in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed.Cir.2003) (citing *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir.1998)).

■ All of these conditions have been met. The issue of the qualification of the presiding judge advocate is identical in both actions; the issue was specifically litigated; the district court's resolution of the ·challenge to the military judge's qualifications was the necessary foundation for denying Mr. Smith's habeas petition (even the 10th Circuit noted on appeal that "even if petitioner's claim regarding the qualifications of the military judge could be characterized as raising a jurisdictional issue, we agree with the district court

that petitioner has failed to establish that the military judge was unqualified." *Smith v. United States*, 48 Fed.Appx. 712, 714 (10th Cir.2002)); and Mr. Smith had a full and fair opportunity to litigate his claims. Indeed, he fairly exhausted his opportunities to litigate the issue by appealing the Army Court's decision to the district court, the court of appeals, and the Supreme Court. His claim here is thus barred by operation of the doctrine of collateral estoppel.

The Court finds no merit in Plaintiff's claim for back pay and allowances on the grounds that the United States breached an enlistment contract. Plaintiff has as much as conceded this point. "Plaintiff agrees with the Defendant that ... 'rights and benefits of a member of the military services, including pay and allowances, are defined by statute ....'" Pl.'s Br. at 10–11; *see also Dock v. United States*, 46 F.3d 1083, 1086 (Fed.Cir. 1995). On this allegation also, Plaintiff thus fails to state a claim upon which relief can be granted. In addition, because the Court finds Plaintiff's claim barred on the basis of collateral estoppel and find that there was no breach of contract, the question of interest on any entitlement to back pay is moot.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss on the basis of collateral estoppel.

The Court also **DENIES** as unnecessary Plaintiff's motion for production of the entire record of proceedings before the district court and the Court of Appeals for the 10th Circuit. The written opinions of the district and appellate courts are sufficient for this Court's determination of Defendant's motion to dismiss. Finally, Plaintiff's motion for judgment on the pleadings is mooted by the grant of Defendant's motion to dismiss.

The Clerk of the Court is hereby directed to dismiss Plaintiff's claim with prejudice.